Associated Metals & Minerals Corporation, Appellant, v. Yusek Maden Muhendisi Hayri Ogelman Maden Isletmeleri, Hayri Ogelman and Fahrunissa Ogelman, Defendants. Lancaster-Fraser-Smith Corporation, and Paul Weir Company, Appellees.

**Gen. No. 46,586.**

First District, Second Division.
June 28, 1955.
Rehearing denied July 19, 1955.

Released for publication September 13, 1955.

Joseph Rosenberg, and Merwin S. Rosenberg, both of Chicago, for appellant.

Browning & Parkin, of Chicago, for appellee; Warren W. Browning, of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

On October 28, 1953, the plaintiff recovered a judgment against the defendants (hereinafter called the

Ogelmans) in the Supreme Court of New York for $539,834.34, and afterward, on November 19, 1953, in the superior court of Cook county, Illinois, filed its complaint in garnishment and interrogatories against the Lancaster-Fraser-Smith Corporation, as garnishee, charging that the garnishee was indebted to the Ogelmans. On January 15, 1954, the garnishee filed its sworn answers to plaintiff's interrogatories, denying that it was indebted to the Ogelmans. Upon plaintiff's traverse of the garnishee's sworn answers, the issues were joined. The cause was heard by the court and judgment was entered on May 26, 1954, discharging the garnishee. On the same day, plaintiff again filed its complaint and interrogatories against the garnishee, to which again, on June 21, the garnishee filed its sworn answers denying any indebtedness to the Ogelmans, and again, on July 22, the court entered a judgment discharging the garnishee. Plaintiff appeals from both judgments.

The only issue on the appeal, in this court's view of the controversy between plaintiff and the garnishee, is whether certain monies in the hands of the garnishee claimed by plaintiff in these proceedings were effectively assigned to one Stanley Suydam, another creditor of the Ogelmans, and placed outside the scope of these proceedings. The facts pertinent to an understanding and a determination of that issue follow.

The Ogelmans, who live in Istanbul, Turkey, entered into an agreement with the garnishee whereby they sold the garnishee a certain tonnage of chrome ore mined in Turkey. The garnishee advanced the expenses of mining, shipping the ore to the United States and other necessary expenses. Meanwhile, the garnishee entered into another agreement with the Vanadium Corporation of America for the sale and purchase of the ore. The purchase price was $186,051.80, payable 80% provisionally and the balance upon a termination of specified weights and analyses. The

garnishee under its agreement with the Ogelmans was to deduct its advances from the purchase price and deduct further its commissions of approximately $7 a ton for every ton sold Vanadium. Vanadium made the provisional payment of $149,423.10 on December 7, 1953. It made a further payment to the garnishee on December 16 of $18,555.05.

On January 15, 1954, before Vanadium made the final payment to the garnishee, and after providing for the deduction of certain disbursements to the Ogelmans, garnishee's advances and commissions, the Ogelmans were indebted to the garnishee in the sum of $13,603.30.

Shortly after November 19, 1953, on the day that plaintiff had instituted its first garnishment proceeding, the garnishee received from one Stanley Suydam, a Washington attorney, two sworn statements dated November 18, 1953, reciting that there was due Suydam the sums, respectively, of $4,200 and $877.10 for professional services rendered in New York and Washington, D. C., from August 20 to November 17, 1953, and for certain disbursements made by him, on behalf of the Ogelmans, during the period from April 2 to November 17, 1953. On or about December 31, 1953, the garnishee received a letter of even date from the Ogelmans in Turkey which, after stating that they had received two invoices dated November 18, 1953, from Mr. Suydam, in the same sums as set out above, read as follows:

"Will you kindly pay Mr. Stanley [sic] the above amounts for our account from the balance due us as a result of the final settlement of chrome ores shipped to you by us."

In the latter part of January 1954, the garnishee received the last payment from Vanadium of $18,073.65. After charging the $13,603.30 indebtedness due it from the Ogelmans and certain other items, which are not in controversy, against that sum, the garnishee had in

its hands the sum of $3,509.96 claimed by plaintiff. On April 30, 1954, garnishee drew its check to Suydam's order in the sum of $3,670.44. This check the garnishee retains and it has made no payment to Suydam.

The garnishee concedes the accuracy of the $3,509.96 figure, but contends that it has been effectively assigned to Suydam under the facts and circumstances hereinbefore set forth.

We may assume, without deciding, the correctness of the garnishee's contention that at no time between November 19, 1953, when the garnishee was first summoned in these proceedings, and January 15, 1954, when it first filed its answers to plaintiff's interrogatories, was the garnishee indebted to the Ogelmans.

The question therefore becomes whether the garnishee was indebted to the Ogelmans between May 26 and June 21, 1954, when, respectively, the garnishee was summoned for the second time and for the second time filed its sworn answers to plaintiff's interrogatories.

██ The creation and existence of an assignment is to be determined according to the intention of the parties and that intention is derived not only from instruments executed by them, if any, but from the surrounding circumstances. Angelina County Lumber Co. v. Michigan Cent. R. Co., 252 Ill. App. 82, 89. See also Holsinger, Theis & Co. v. Holsinger, 329 Ill. App. 460, 472–3; Corbin on Contracts (1951) sec. 879; Williston on Contracts (rev. ed. 1936) sec. 424. Required quite clearly, however, is the transfer of a designated or identified right, claim or fund. Pliley v. Phifer, 1 Ill.App.2d 398, citing cases; Corbin op. cit., supra, at sec. 879, p. 529.

Much of the confusion that arises in this case can be traced to the failure of the parties to distinguish and analyze the difference between an assignment, a third-party beneficiary contract and a trust. In a somewhat loose although not improper sense, all partake of the

legal aspects of an assignment—e. g., an assignment in trust, or an assignment for the benefit of a third party. See Restatement, Contracts, sec. 159, comments and illustrations; Williston op. cit., supra, at secs. 424, p. 1221, and 436; 4 Am. Jur. Assignments, sec. 86; 6 C. J. S. Assignments, sec. 73.

■ ■ Analytically, an assignment arises in legal contemplation because of a particular transaction between assignor and assignee or the assignee's representative. Commercial Nat. Bank v. Kirkwood, 172 Ill. 563, 569; Corbin op. cit., supra, at secs. 879, p. 528 and 880, p. 540. See also Restatement, Contracts, sec. 149 (1) and comment (a); Williston op. cit., supra, at sec. 436. Professor Corbin in his treatise at sec. 880, p. 540, states:

"An assignment made between a debtor and his creditor that instead of paying the creditor the debtor shall pay a third person to whom the creditor himself is indebted, is not operative as an assignment. The third person may have an enforceable right by virtue of this agreement, but if so, it is a right as a creditor beneficiary, and not as an assignee. An assignment is a transaction between a creditor and the assignee. In the case just stated, the transaction is an agreement between the debtor and creditor. The former requires no assent by the debtor; the latter, in order to be operative, requires his assent and promise."

The assignee's representative in legal contemplation is not the creditor's debtor. Commercial Nat. Bank v. Kirkwood, supra; Edmund Wright Ginsberg Corp. v. C. D. Kepner Leather Co., 317 Mass. 581, 590–1, 59 N.E.2d 253, 258; Nixon v. Joshua Hendy Mach. Works, 51 Wash. 419, 99 Pac. 11; and cf. Exchange Bank & Trust Co. v. Arkansas Grain Co., 169 Ark. 1084, 1086, 277 S. W. 871, 872; Restatement, Contracts, secs. 149 (1) and comment (a), and 159, comments and illustrations; Williston op. cit., supra, at sec. 436. The

transaction creating the assignment is one wherein the creditor expresses himself by a communication— orally, by a writing sealed or unsealed, or by some combination of expressions—to the assignee or to someone, other than the creditor's debtor, as his representative, so as to indicate his intention then and there to transfer his right or rights against the debtor to the assignee. Corbin op. cit., supra, at sec. 879, p. 528; Williston op. cit., supra, at sec. 436; Restatement, Contracts, sec. 149 (1) and comment (a); and see Edmund Wright Ginsberg Corp. v. C. D. Kepner Leather Co., supra.

■ Applying these statements of law to the evidentiary facts in the record before us, we find nothing in them to sustain the garnishee's contention of an effective assignment. Prior to the Ogelmans' letter of December 31, 1953, written and delivered to the garnishee, we have only Suydam's statements remitted by him to the garnishee upon which to sustain that contention. Those statements purport only to apply to the garnishee for payment of Suydam's claims against the Ogelmans, generally. They fail to reflect any claim by Suydam against the particular indebtedness to become due and owing the garnishee from Vanadium and, thereafter, to the Ogelmans from the garnishee. The evidence is uncontradicted that the garnishee had been paying the earlier claims of Suydam, as well as numerous other attorneys and had been advancing other indirect expenses even while the Ogelmans were indebted to the garnishee in sums ranging up to $13,603.30. It is apparent that Suydam was to draw upon the general credit extended to the Ogelmans by the garnishee. Corbin op. cit., supra, at sec. 880, pp. 537–8; Restatement, Contracts, sec. 163. Any contrary conclusion or inference is unwarranted. There is no evidence even that Suydam either understood that he had a claim against the particular indebtedness, or that he in any way acted in reliance upon its existence and suffered

some detriment, or even that he has at any time asserted any claim against the fund. The cases cited by the garnishee in support of its contention of an effective assignment evidence a transaction between creditor and assignee and a transfer of a designated or identified claim, fund or right. See Warren v. First Nat. Bank of Columbus, 149 Ill. 9; Knight v. Griffey, 161 Ill. 85; Holsinger, Theis & Co. v. Holsinger, supra; Gray v. Bever, 122 Ill. App. 1.

The further cases cited by the garnishee are similarly distinguishable. In Pliley v. Phifer, 1 Ill.App.2d 398, the statements of the court (404–5) to the effect that there had been an effective assignment in that case have two aspects. The first is founded upon the cases of Young v. Jones, 180 Ill. 216, and Smith v. Bates Machine Co., 182 Ill. 166, cited by the court in the Pliley case (405). However, in both the Smith and the Young cases there had been a transaction between creditor and assignee and a transfer of an identified claim or right. Second, in the Pliley case there had also been a transaction between the creditor and the assignee—witness the delivery to the assignee of an unsigned instrument from the creditor (402)—apparently sufficient in law to work an effective assignment under the facts and circumstances and the law as applied in Gray v. Bever, supra, and unquestionably sufficient if tested by the broad rule of intention when applied to the facts and circumstances present in the Pliley case. But the Pliley case was decided principally upon the ground that the assignee was a third-party creditor beneficiary.

In the final case cited by the garnishee, Orr v. First Nat. Bank, 325 Ill. App. 698, opinion published in abstract only, it was held to be a question of fact and one to be determined by the trier of the facts, whether the depositor, in whose name the savings account had been made with the garnishee-bank, was the trustee of the deposit for the benefit of the beneficiary, the deposi-

555

tor's sister, under whom the plaintiff-assignee claimed. The case is not remotely in point. There is no evidence in the instant case to sustain a contention of a trust over the monies in question with the Ogelmans as trustees. In so far as the garnishee intimates that it itself is the trustee, we find no evidence to sustain its contention. A debtor cannot be both debtor and creditor (trustee) of the same fund, and if the garnishee promised the Ogelmans that it would act as trustee of the monies on behalf of Suydam, the garnishee of course should be held liable and accountable to Suydam, not as trustee, however, but as one who has made a promise for the benefit of a third party, the creditor Suydam. Williston op. cit., supra, at sec. 436. But there is no evidence in the record before this court of such a promise communicated to the Ogelmans or, for that matter, to anyone. The drawing by the garnishee of its check to Suydam's order, without any delivery, was not, in the absence of something more, evidence of a promise to pay Suydam from the particular fund or even to pay him generally. Apparently the garnishee intended to comply with and honor the authority given by the Ogelmans and their request to pay Suydam. Nothing further, however, can be derived from the evidence.

We conclude, therefore, that there is no evidence in the record that Suydam was the assignee of the funds or was entitled to them as a creditor beneficiary.

The judgment entered May 26, 1954, is affirmed and the judgment entered July 22, 1954, is reversed, and judgment entered here for the plaintiff against the garnishee in the sum of $3,509.96.

Judgment entered May 26, 1954, affirmed; judgment entered July 22, 1954, reversed; and judgment entered here for plaintiff against garnishee for $3,509.96.

McCORMICK, P. J. and SCHWARTZ, J., concur.