435 P.2d 740

John E. NORDIN, Jr., and Barbara G. Nordin, husband and wife, and Arizona Moving and Storage Company, an Arizona corporation, Appellants,

v.

Henry KALDENBAUGH, Appellee.

No. 2 CA–CIV 338.

Court of Appeals of Arizona.

Dec. 27, 1967.

Rehearing Denied Feb. 20, 1968.

**10**

Lesher, Scruggs, Rucker, Kimble & Lindamood, by E. F. Rucker, Tucson, for appellants.

Zipf, Larkin & Lyle, and Alfred J. Rogers, Tucson, for appellee.

HATHAWAY, Chief Judge.

The plaintiff, Henry Kaldenbaugh, filed a stockholder's derivative action on behalf of Arizona Moving and Storage Company, an Arizona corporation. The plaintiff sought damages for excessive salaries and expense accounts paid the defendant, John E. Nordin, Jr. and his wife Barbara G. Nordin; injunctions to prohibit the Nordins from drawing salaries and expenses in excess of a reasonable amount to be set by the court; and, nullification of a stock issue to the defendant Nordin. The cause was tried to the court without a jury and judgment was entered against the defendants in superior court, hence their appeal.

The Arizona Moving and Storage Company was incorporated in 1949 and the defendant Nordin was elected president and appointed general manager. On October 6, 1949, the stockholders at a special meeting passed the following resolution:

"RESOLVED: That after the issuance of stock as follows:

"JOHN E. NORDIN, JR.
5 shares, par value $500.00

W. T. HOLMES,
5 shares, par value $500.00

BARBARA G. NORDIN,
5 shares, par value $500.00

ESTELLE Y. HOLMES,
5 shares, par value $500.00

no further stock shall be issued by this corporation unless consented to by all of the outstanding shares at a special meeting of the stockholders called for that purpose."

The minutes of the meeting were signed by all of the stockholders above enumerated except Estelle Y. Holmes who was apparently present at the meeting and was aware of the resolution.

In 1957, W. T. Holmes acquired his wife's five shares in the defendant corporation, thus giving him ten shares. On March 21, 1964, W. T. Holmes sold these ten shares to the plaintiff, Henry Kaldenbaugh, and assigned all claims which he might have against the defendant corporation and against the defendant John E. Nordin, Jr.

On April 9, 1965, the joint stockholders and board of directors meeting was held at which time it was voted to change the number of corporate directors from four to three members. Those elected were the defendant, John E. Nordin, Jr., the plaintiff and Robert Riordan, the corporation accountant, who was not a stockholder. At the same meeting the bylaws of the corporation were changed so that in voting on all corporate matters only the plaintiff and the defendant, John E. Nordin, Jr., were to vote unless they reached a disagreement whereupon Robert Riordan was to vote to break any ties.

At the board of directors meeting (not a shareholders meeting) of April 20, 1965, John E. Nordin, Jr. and Robert Riordan passed the following resolution over the objections of the plaintiff:

"* * * that for the purpose of providing investment capital that HENRY KALDENBAUGH and JOHN NORDIN each be granted the right to purchase $5,000.00 of a proposed $10,000.00 issuance of common capital stock. Right to be non-assignable and to be exercised on April 26, 1965, or the same shall terminate."

It is to be noted that the third shareholder in the company, Barbara G. Nordin, was not present and was not mentioned in this resolution. On the same day, April 20, 1965, John E. Nordin, Jr., exercised his option and purchased $5,000 of the proposed $10,000 issuance of common capital stock. The plaintiff voted against this resolution and did not exercise his option.

The financial status of the corporation was generally poor and for most years the corporation operated at a loss. From the year 1963 John E. Nordin, Jr., received from the corporation in excess of $24,000 annually.[1] As testified to by John E. Nordin, Jr., himself the corporation had been in arrears of its rent at the end of 1964, was indebted to the plaintiff's insurance company for past insurance coverage in the amount of $10,200, and in the early part of 1965 was in rather serious financial difficulty.

W. T. Holmes and Estelle Y. Holmes, his wife, were unaware of John E. Nordin, Jr.'s salary and expense accounts, as no board of directors or stockholders meetings were held from October, 1949 until April 9, 1965. At the joint board of directors and stockholders meeting held on April 9, 1965, John E. Nordin, Jr., proposed that the corporation be allowed to borrow $25,000 for the purpose of providing operating capital. Besides voting against that proposal, the plaintiff also objected to John E. Nordin, Jr.'s salary and entertainment expense accounts. On April 20, 1965, at the board of directors meeting the matter of the corporation's borrowing money was proposed in a resolution and passed two to one, with the plaintiff voting against it. Again at this meeting the plaintiff objected to the defendant's salary and entertainment expenses and moved to set the defendant's salary at $700 per month. The defendant, John E. Nordin, Jr. and Robert Riordan voted against it, and the motion was denied. Sub-

---

1. In recent years, the defendant has received the following from the corporation: An annual salary of $19,200 (received yearly from 1960); the use of a Lincoln automobile all expenses of which are paid by the corporation; insurance from the corporation having a value of approximately $220 per year; and, as entertainment expenses charged to the corporation for the years 1963 through 1965 an average yearly amount of $4,100 expended at the Tucson Country Club and the Old Pueblo Club.

sequently, at the same meeting the plaintiff advised John E. Nordin, Jr. and Robert Riordan that he intended to commence legal proceedings on behalf of the corporation for the alleged unauthorized acts of the other directors. The action precipitating this appeal ensued.

Many questions are presented for review by the appellants, but only the following need be decided by this court for a proper disposition:

1. Was there evidence from which the lower court could deem John E. Nordin, Jr.'s salary and expense accounts unauthorized?

2. Was the October 6, 1949 resolution valid and binding on all the stockholders?

3. Could that resolution be enforced by the plaintiff, a successor in interest?

4. Was the April 20, 1965, resolution passed at a directors meeting and not a meeting of stockholders, null and void?

5. Was the plaintiff's stockholders derivative action properly brought?

6. Did the superior court properly issue an injunction against both the defendants, John E. Nordin, Jr. and Arizona Moving and Storage Company?

## NORDIN'S SALARY AND EXPENSE ACCOUNTS

The lower court found that neither the expense accounts nor the salary of the defendant, John E. Nordin, Jr., were ever authorized at a board of directors or stockholders meeting and that neither W. T. Holmes nor Estelle Y. Holmes were ever aware of the amount of John E. Nordin, Jr.'s salary and expense accounts. John E. Nordin, Jr.'s own testimony clearly displays the unauthorized character of his salary and expense accounts.

"Q  In the spring of 1959 who authorized your salary increase to $19,200?

*     *     *     *     *     *

A  That would be Mr. Holmes and myself.

Q  Was this at a board of directors meeting?

A  No, it was at an informal meeting which we use to hold periodically, over lunch.

Q  And was any notice sent out of this meeting, either in the form of a notice of a board of directors meeting or a stockholders meeting?

A  Not to my knowledge.

Q  Were the other two directors contacted concerning this meeting?

A  Not to my knowledge, no.

Q  And who authorized the corporation to pay the expenses which you incurred at the Tucson Country Club?

A  Mr. Holmes and myself.

Q  And when was that?

A  That would have been at the time I joined the Tucson Country Club, and the same holds true of the Old Pueblo Club.

Q  And were the other members of the board of directors notified concerning this?

A  No, not to my knowledge."

Although the court found as a matter of fact that Mr. Holmes was totally unaware of the amount of Nordin's salary and expense accounts, contra to Nordin's testimony above, even were Nordin's testimony above accepted as true the salary and expense accounts would still remain unauthorized under the rule laid down by our Supreme Court in Karns v. Industrial Commission, 50 Ariz. 466, 472, 73 P.2d 104, 106 (1937):

"In the present case it appears that, while the corporation had a board of directors consisting of five members, the only ones who knew anything about the alleged employment of petitioner were himself and Scott, the secretary of the corporation. Certainly, an employment of this nature which rests not even upon the action of the board of directors sitting as a board, but upon the informal approval of the minority of the members of the board, of which minority the pe-

titioner was one, cannot stand. It is doubtless true the fact a man is an officer and director of a corporation does not automatically and perpetually bar him from also becoming an employee on a salary; but in order to become such, the employment and the salary must at least be approved by an independent and unbiased majority of the directorate, acting at a meeting of the board, if not by the stockholders themselves."

See also, Martin v. Santa Cruz Water Storage Co., 4 Ariz. 171, 36 P. 36 (1894); and Monterey Water Co. v. Voorhees, 45 Ariz. 338, 43 P.2d 196 (1935).

Nordin, being a director, the president and general manager of the corporation, stood in a strong fiduciary relationship to the corporation and owed it and the other directors and stockholders the utmost in loyalty and good faith. Steinfeld v. Nielsen, 15 Ariz. 424, 139 P. 879 (1914); Hatch v. Emery, 1 Ariz.App. 142, 400 P.2d 349 (1965). This alleged informal "authorization" of his (Nordin's) salary and expense accounts cannot stand in the light of the law put forth above and the bylaws of the corporation itself which state that "salaries of the officers shall be fixed * * * by the Board of Directors * * *." Bylaws, Art. IV, Sec. 10.

### EFFECT OF THE RESOLUTION OF OCTOBER 6, 1949

An agreement between shareholders as to the issuance of stock is not binding upon the corporation, although the agreement may constitute a binding contract on the shareholding parties. 18 C.J.S. Corporations § 204, at 641. However, in the instant case we are dealing with a closely held corporation. Where the stockholders are also, as in the case before us, the directors, managers, and officers of the corporation, in their agreements they also bind the corporation. Burger v. Western Sand and Gravel Co., Tex.Civ. App., 237 S.W.2d 725 (1950); 18 Am.Jur. 2d Corporations § 485, at 979. See also, Russell v. Golden Rule Min. Co., 63 Ariz. 11, 159 P.2d 776 (1945).

Here, the four stockholders [2] entered into the resolution of October 6, 1949, for the purpose of protecting themselves from a subsequent attempt by any stockholders to seize control of the corporation. The validity of the resolution as a binding contract on both the stockholders and the corporation is not contested by the appellant (except as to Estelle Y. Holmes' failure to sign). We hold that the resolution was still in full force and effect at the time the plaintiff acquired his fifty per cent ownership of the stock from W. T. Holmes.

### WHETHER PLAINTIFF MAY ENFORCE THE RESOLUTION OF OCTOBER 6, 1949

The defendants contend that when W. T. Holmes sold his stock to the plaintiff he violated the agreement in the resolution of October 6, 1949 and thereby terminated said agreement. We cannot concur in this contention, since as above stated, the purpose of the agreement was to prevent a stockholder or stockholders from acquiring control of the corporation without the unanimous consent of all the stockholders. The fact that the Holmeses had sold their entire interest (fifty per cent of the stock) to the plaintiff certainly did not abrogate the purposes of the resolution. To the contrary, the defendants Nordin and the plaintiff stood in the same position as the defendants Nordin and the Holmeses in their desire to prevent a sole interest from obtaining control of the corporation. We see no other reason for the defendant John E. Nordin, Jr., to object to the enforcement of the resolution. Nordin, himself, sought to evade that very agreement at the meeting of the directors on April

---

2. The lower court found as a conclusion of fact and law that Estelle Y. Holmes, although not signing the resolution, acquiesced in the agreement and therefore said agreement was not void for her failure to sign; we concur in this conclusion.

20, 1965 when upon a two-to-one vote (the plaintiff dissenting) the majority of directors agreed to issue additional stock by which Nordin effectively gained control of the corporation.

As above stated, the resolution in question was binding upon the corporation and therefore the sole question to be determined here is whether the plaintiff, by his purchase of the stock of W. T. Holmes, acquired the stock subject to the resolution. The·plaintiff acquired his interest in the corporation . through a ·contract of sale and assignment[3] executed on March 21, 1964 by W. T. Holmes.

Since Holmes was obviously bound by the resolution; the question becomes, did the plaintiff, by the assignment from Holmes, take the stock subject to the resolution? Through the assignments the plaintiff not only acquired the stock but was also placed in the exact position of W. T. Holmes and his relationship to the corporation and all of his rights and liabilities arising therefrom. In re Beffa's Estate, 54 Cal.App. 186, 201 P. 616 (1921); Ass. Metals and M. Corp. v. Isletmeleri, 6 Ill.App.2d 548, 128 N.E.2d 595 (1955); Restatement of Contracts §§ 151, 152 and 160 (3). As Holmes' successor in interest the plaintiff acquired all of Holmes' rights and assumed his obligations regarding the resolution. Plaintiff was, therefore, bound by the agreement. 6 Am.Jur.2d Assignments § 1, at 185–86.

## EFFECT OF THE RESOLUTION OF APRIL 20, 1965

The resolution of April 20, 1965, as previously. noted, passed at a directors meeting, not a duly called meeting of the stockholders, was held in the absence of Barbara G. Nordin, an owner of one quarter of the stock in the corporation. Since, as concluded above, the resolution of October, 6, 1949 was in full force and effect at the time of this directors meeting, we hold that the resolution of April 20, 1965 was violative of the agreement in the resolution of October 6, 1949. Not only was Barbara G. Nordin absent, but the plaintiff, a fifty per cent stock owner in the corporation, voted against the October 20,. 1965 resolution. It, therefore, failed since two of the three stockholders did not agree to its passage and, as previously noted, the corporation was bound by the October 6,. 1949 resolution. Moss v. Waytz, 4 Ill.App. 2d 296, 124 N.E.2d 91 (1955).

## VALIDITY OF PLAINTIFF'S STOCKHOLDERS DERIVATIVE ACTION

The trial court found as a matter of fact that a demand on the board of directors by the plaintiff to take action concerning these matters would have been futile and found as a matter of law that the plaintiff had complied with Rule 23(b) of the Arizona Rules of Civil Procedure, 16 A.R.S. We concur in the superior court's. findings in light of the following facts: At the April 20, 1965 meeting of the board of directors the plaintiff moved that the defendant, John E. Nordin, Jr., receive a salary of $700 per month and that this motion was not carried against the defendant Nordin's and Robert Riordan's dissents; that Robert Riordan had stated more than once and at the above board of di-

3. "KNOW ALL MEN BY THESE PRESENTS: ·

"That I W. T. Holmes of Tucson,. . Pima County, Arizona, for and in con-· . sideration of the sum of one dollar and other good and valuable considerations, in hand paid to me by Henry Kaldenbaugh, the receipt of which is hereby acknowledged, do by these presents sell, assign, transfer and set over to the said Henry Kaldenbaugh all of my right title and interest in and to the Arizona Moving and Storage Company, an Arizona corporation and in and to the stock of said corporation, together with any and all claims of every kind and nature whatsoever that I may or might have against the Arizona Moving and Storage Company and against John E. Nordin, Jr., hereby authorizing him to in my name or otherwise, to enforce this assignment according to the tenor hereof, and to take all legal measures which may be necessary for the complete enforcement and enjoyment of the assigned promises."

rectors meeting that he felt John E. Nordin, Jr.'s salary to be too low; that Robert Riordan had in the past always voted in accord with the defendant John E. Nordin, Jr.; and, that at the board of directors meeting of April 20, 1965 the plaintiff warned that he would commence legal proceedings on behalf of the corporation if the alleged unauthorized acts of the defendant John E. Nordin, Jr., continued. Obviously, a demand upon the corporation (which in essence would have been merely a demand upon the defendant John E. Nordin, Jr. and Robert Riordan) to commence legal proceedings would have been futile. Funk v. Spaulding, 74 Ariz. 219, 246 P.2d 184 (1952); Russell v. Golden Rule Min. Co., 63 Ariz. 11, 159 P.2d 776 (1945); 13 Fletcher, Cyclopedia Corporations § 5832, at 208 (Perm. ed. 1961).

## PROPRIETY OF INJUNCTIONS

■ The defendant, John E. Nordin, Jr., argues that the trial court's injunction against his receiving a salary not in excess of $900 per month and not in excess of $100 per month for entertainment expenses places him in a difficult position which does not provide for substantial future changes in the corporation's business which may present a need for an increase in his salary and entertainment expenses. He correctly concludes that before his salary and entertainment expenses could be increased he would need a court order. We conclude that the defendant has answered his own questions since it is certainly not an unreasonable requirement that he, when appropriate circumstances arise, should go to the trial court and present the circumstances and request an appropriate increase in his salary and expense account.

■ The lower court's issuing of its injunctions is in accord with A.R.S. § 12–1801 [4] and the defendant has presented us with no substantial evidence to support his contention that these injunctions were an abuse of the trial court's discretion. The reviewing court will not substitute it's judgment for that of the trial court where there is substantial evidence to support the injunctive decree granted by the trial court. Gillespie Land and Irr. Co. v. Gonzalez, 93 Ariz. 152, 379 P.2d 135 (1963).

The evidence clearly establishes that the defendant, John E. Nordin, Jr., was drawing a salary and spending as entertainment expenses excessive amounts when viewed in the light of the financial status of the Arizona Moving and Storage Company. We can find no abuse of discretion in the trial court and we therefore affirm its injunctive relief. 10 Fletcher, Cyclopedia Corporations § 4850, at 298–99 (Perm. ed. 1961).

Judgment affirmed.

ALICE TRUMAN and LLOYD C. HELM, Superior Court Judges, concur.

NOTE: Judges JOHN F. MOLLOY and HERBERT F. KRUCKER having requested that they be relieved from consideration of this matter, Judges ALICE TRUMAN and LLOYD C. HELM were called to sit in their stead and participate in the determination of this decision.

4. A.R.S. § 12–1801(1):
   "Judges of the superior court may grant writs of injunction:
   "1. When it appears that the party applying for the writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant."