John Buck, Intervening Petitioner-Appellant, v. Illinois National Bank & Trust Company, a National Banking Association, Plaintiff-Appellee.

Illinois National Bank & Trust Company, a National Banking Association, Plaintiff-Appellee, v. William T. Colwell, d/b/a Mount Morris Auto Sales, and Marcia J. Colwell, Defendants.

Gen. No. 66–72.

Second District.

January 17, 1967.

Fearer and Nye, of Oregon, for appellant.

Barrick and Jackson, of Rockford, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This appeal is prosecuted from an order of the Circuit Court of the 15th Judicial Circuit, Ogle County, entered on the 8th day of February, 1966, that directed the Clerk of that Court to deliver to the Plaintiff, Illinois National Bank & Trust Company, the sum of $3266.89, previously

deposited with the Clerk by American Motors Sales Corporation pursuant to a garnishment proceeding. The order also found the issues raised by a Petition in Intervention brought by the Appellant herein, John Buck, in that garnishment proceeding, to be in favor of the Bank.

In February, 1960, William Colwell began a used car business outside of the Village of Mt. Morris in Ogle County. To capitalize the business, Colwell obtained $10,000 from John Buck. The money advanced by Buck was secured by Colwell's personal judgment note and a written agreement dated February 25, 1960. That agreement provided that Colwell was to deposit all receipts from the business in a special bank account subject to periodic examination by Buck. Colwell was to pay all normal business expenses from that account; regular payments on the note to Buck; and a salary to himself of $129 a week. The profits of the business were to be ascertained at the close of each fiscal year and 20% of the net profit paid to Buck.

The agreement also recited that in the event Colwell was unable, because of financial difficulties, to continue the business ". . . then at the Bucks' election, assets of said business not exceeding the then unpaid balance of said note . . . shall be transferred to the Bucks. . . ."

In March, 1963, Colwell borrowed $20,000 from the Bank. His credit application indicated as a current obligation, a personal loan of $10,000 but did not mention the source or that it was secured by any collateral owned by him. Colwell defaulted in his payments to the Bank and a judgment was confessed against him, on his personal note, on April 29, 1965, in the amount of $17,945. Garnishment proceedings were brought by the Bank against the American Motors Sales Corporation to recover $3,266.89 owed Colwell for returned automobile parts.

Buck's original Petition for Intervention alleged that the written agreement of February 25, 1960, was a written "assignment" to him of the money held by the garnishee and that, therefore, he was entitled to recover it rather than the Bank. However, Buck, at the trial, and in this appeal, maintains that the money was orally assigned to him sometime in November or December, 1964, by Colwell, and the trial court permitted an amendment to his Petition to reflect that allegation.

At the trial, Colwell was called to testify by Buck as an adverse witness. He stated that on November 29, 1964, he called Buck to his home to discuss his many financial problems.

Colwell stated that on that occasion he reassured Buck "that his contract that we made up five years prior that it still stated that I wanted to protect him with the parts money returned when it came in from American Motors just as the agreement had originally been. I told him at that time that whatever was derived from those returned parts, any percentage holdbacks or moneys put in reserve would be his to apply towards the $10,000.00."

Buck himself did not recall the exact date of that conversation but thought that it was in the latter part of November or early December of 1964. His testimony as to the "assignment" was as follows:

> "We had no agreement, no written agreement, but he told me that I was to get the assignment from American Motors. He said that was about all the equity that he would have that he could put his fingers on, that when he got his check for that, that it would be applied to the payment on the principal on the note, that we were to work out arrangements for payment of the rest of it after everything else was settled."

No one else was present at the conversation and the assignment was never put in writing.

Colwell further testified to several conversations that he had with various officers of the Bank at the end of 1964. The Bank at that time sought additional collateral for their previous loans to him and requested a pledge of the parts or the refund money. Colwell stated that he informed the Bank that he could not make such a pledge as those assets had already been assigned to Mr. Buck. A former employee of Colwell related that he was present at one of those conversations and that Colwell advised the Bank of his prior commitment to Buck.

Several officers of the Bank testified that Colwell never discussed his prior assignment of any of his assets; that they had never heard the name of John Buck prior to his Petition; and that Colwell had repeatedly assured them that none of his personal financial obligations were secured by collateral.

It is contended by Buck that a valid oral assignment of a chose in action takes priority over a subsequent judgment creditor and that the manifest weight of the evidence indicates that the Bank had notice of the assignment. We believe that the notice or lack thereof to the Bank is not essential to a resolution of this problem. It is recognized by the appellant that in order to prevail, an actual assignment of the deposit must have occurred prior to the garnishment. A mere transfer to Buck for purposes of security would have been ineffective as to the Bank, since such transfer totally failed to comply with the requirements of the Uniform Commercial Code in regard to security transactions. Ill Rev Stats, c 26, §§ 9–102, 9–203 and 9–401 (1965). It is also apparent that the written agreement of February 25, 1960, was not of itself sufficient security to protect Buck from other creditors, even with notice, since no transfer, by its terms, was to take place until certain events occurred that had not, in fact, occurred.

Illinois law does recognize oral assignments as valid, unless expressly prohibited by statute, of all items

of property that are capable of assignment, including rights, claims or choses in action. Leslie E. Keeley Co. v. Hargreaves, 236 Ill 316, 86 NE 132; Hyatt v. Foster, 195 Ill App 428, 431.

■■ An assignment, oral or written, is the transfer of some identifiable property, claim or right from the assignor to the assignee. The parties must intend to effectuate an assignment at the time of the transfer although no particular language or procedure is necessary. Associated Metals & Minerals Corp. v. Ogelman, 6 Ill App2d 548, 552, 128 NE2d 594. If a valid assignment is effected, the assignee acquires all of the interest of the assignor in the property that is transferred. The assignee, it has been often said, is placed "in the shoes" of the assignor. Chicago in Trust for Use of Schools v. Fischer, 52 Ill App2d 55, 61, 201 NE2d 660.

■■ In order to determine whether an assignment has occurred, it is necessary to ascertain the intention of the parties. Where, as here, there is no writing to evidence that intention, it is necessary to scrutinize the surrounding circumstances and acts of the parties to ascertain their intentions.

Colwell's assignment allegedly occurred during a conversation with Buck in November or December of 1964. Colwell recalls that he reassured Buck of his intention to comply with the written agreement of 1960 and that any refund money from American Motors would "be his to apply towards the $10,000.00." Buck remembered that it was agreed that when Colwell "got his check for that, that it would be applied to the payment on the principal . . ."

■ Although Colwell testified that he advised the Bank of the assignment, his testimony indicates that he referred primarily to the written agreement with Buck in 1960. There is no credible evidence that either Buck or Colwell notified American Motors of the assignment

or that Buck did anything to assert his claim to the refund. Buck understood that the money would be delivered to him only after American Motors released the funds to Colwell. His position in relation to the refund was no different after the purported assignment than it had been prior to that conversation. None of these circumstances are consistent with an intention to create a valid assignment.

Under the circumstances, we can only agree with the trial court that no assignment had been intended, or effected, by the parties and that the funds were vulnerable to the garnishment action brought by the Bank.

Judgment affirmed.

DAVIS and SEIDENFELD, JJ., concur.