HERITAGE BANK OF BOLINGBROOK, Plaintiff-Appellee, *v.* RECREATIONAL RETAIL BUILDERS, INC., Defendant-Appellee.—(LOUIS JOLIET BANK OF JOLIET *et al.,* Garnishees; OLD CHICAGO TOWNE PARTNERS, Intervenor-Appellant.)

Third District    No. 79-866

Opinion filed July 2, 1981.

Friedman & Koven, of Chicago, and Donald L. Wennlund & Associates, of New Lenox, for appellant.

Peter D. Oosterbaan and Michael E. Renaldi, both of Gannon & Oosterbaan, of Alsip, for appellees.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This appeal comes to us after an order was entered by the circuit court following supplementary proceedings to discover assets in the nature of a garnishment. That order determined that certain funds were available as assets of the defendant, Recreational Retail Builders, Inc. (hereinafter Builders), to satisfy a stipulated judgment entered in favor of the plaintiff, Heritage Bank of Bolingbrook (hereinafter Heritage). The issue raised on this appeal is presented with a factual background spanning several years in time. That background follows.

In September of 1973, Builders purchased a tract of land in Will County for development as an amusement and mercantile establishment. In order to have the subject tract of land annexed to the nearby Village of Bolingbrook with the appropriate zoning classification for the anticipated development, Builders negotiated an annexation agreement with the village. That agreement was approved by the Bolingbrook village council with an ordinance unanimously adopted on February 5, 1974. Agreements of this type are authorized by the Municipal Code. Ill. Rev. Stat. 1979, ch. 24, par. 11—15.1—1 *et seq.*

In the meantime, an Illinois limited partnership was being formed under the name of Old Chicago Town Partners (hereinafter Chicago Partners). The agreements which document the organization of the partnership indicate that Builders was a general partner. The stated purpose of Chicago Partners was the development of the same real estate purchased by Builders in 1973. As its contribution to the partnership assets, Builders executed its deed to the subject tract on February 7, 1974. In addition, on February 13, 1974, Builders assigned to Chicago Partners:

> "All intangible property now or hereafter owed or held by [Builders] in connection with the Project including, but not by way of limitation, * * * all * * * contract rights [and] agreements * * *."

On the same day as the assignment was executed, the February 7 deed was filed of record.

Two days later, on February 15, 1974, the annexation agreement previously approved by the Bolingbrook village council was signed by each of the parties: Builders, the village, and others. Among its provisions, the agreement obligated Builders to repave and improve portions of Illinois Route 53, solely at Builders' cost and expense; provided, however, that if other lands adjacent to Route 53 benefiting from the repaving and improvement were subsequently annexed to the village, Builders would be entitled to "recapture" a percentage of the highway improvement cost. Such a procedure for recapture in subsequent annexations is contemplated by section 30—1204A of the Bolingbrook Municipal Code.[1]

As one might anticipate, a subsequent annexation did occur. On August 27, 1974, after approval by the Village of Bolingbrook, an annexation agreement was entered into between the village and two other

---

[1] Section 30—1204A. "RIGHT TO REIMBURSEMENT FROM LATER, ADJACENT DEVELOPER. Any developer required to improve a roadway pursuant to Section 30—1202A hereof shall be entitled to reimbursement for a portion of his expenses of such improvement, or payments pursuant to Section 30—1203A attributable thereto, from any developer who shall subsequently seek to subdivide any tract of land adjacent to said roadway and fronting upon any part of said roadway which has been previously improved either by the former developer pursuant to Section 30—1202A or with funds paid by him pursuant to Section 30—1203A."

parties, the Louis Joliet Bank of Joliet (hereinafter Joliet Bank) and the partnership of E. N. Maisel and Associates (hereinafter Maisel). Joliet Bank was the owner as trustee of the land annexed and Maisel was the party intending to develop the same real estate. In paragraph nine of the August annexation agreement, Maisel agreed to pay over to the village a portion of the cost of improving Illinois Route 53, that portion to be paid in increments as the construction progressed. The village in turn would pay over the recaptured funds according to its previous agreement with Builders.

Chronologically, the next event of significance occurred in April of 1975. At that time, Builders sold tenant improvements in the amusement and mercantile development to Big Top Popcorn, Inc. (hereinafter Big Top). Big Top paid for the improvements with two installment notes payable to Builders, which notes were secured with purchase money security interests in the improvements. A month later, Builders assigned its interest in the notes to Heritage, granting to Heritage the right of full recourse should Big Top default on its obligation.

In December of the same year, 1975, an agreement was entered into between Builders, Maisel, and the Village of Bolingbrook. The agreement recited that a secondary source of water supply was needed to serve the emergency fire flow requirements of both the Maisel development and the Builders development. To fulfill that need, Maisel and Builders agreed to jointly construct a 12-inch water main 3,600 feet in length. To finance the water project, an escrow account was established at Joliet Bank. Maisel agreed to deposit $100,000 in the escrow account on behalf of Builders, which the parties acknowledged to be the amount owing to Builders as the first increment of the highway recapture monies; Maisel also agreed to deposit $50,000 in the escrow account as its contribution to the cost of constructing the water main. The water main agreement does not make reference to the Chicago Partners, and there is no indication that Builders was acting for the limited partnership as one of its general partners. A subsequent instrument dated February 10, 1976, involving only Builders and Chicago Partners, recites that the former was acting on behalf of and as agent for the latter in entering into the water main agreement. By the same instrument, Builders assigns all its rights and obligations under the water main agreement and escrow to Chicago Partners. The instrument further recites that Builders "has not heretofore assigned, transferred, pledged, hypothecated or otherwise encumbered the Agreements or any of its rights thereunder, and that it has the full right and power to make this assignment."

In 1976 financial difficulties for Chicago Partners led to the filing of a petition for arrangement under chapter XII of the Federal Bankruptcy Act. The statement of affairs filed with the United States District Court

for the Northern District of Illinois listed the assets of the limited partnership, and included in that list was the $150,000 in the savings account escrow at Joliet Bank designated for water main construction. Found nowhere on the schedule of assets was any mention of the unpaid increments of the "recapture fund" payable from Maisel to the village and then to Builders as a result of the highway construction. As an adjunct to the bankruptcy proceeding, and because the lenders demanded new management to continue and extend Chicago Partners' line of credit, the limited partnership was reorganized and Builders' interest therein was converted from that of a general partner to that of a Class C limited partner. In the same agreement that converted the partnership interest of Builders, the retiring general partner, the following appears:

"(Builders) hereby assigns, transfers and conveys to (Chicago Partner) its successors and assigns, all of (Builders') right, title and interest in and to the following:

* * *

c. Any and all claims against contractors, subcontractors or others relating to the construction and operation by (Chicago Partners) its employees and agents of the Center * * *."

The reorganization of the partnership occurred on January 28, 1977.

The background of this litigation climaxes with a civil action filed by Heritage against Builders seeking to exercise recourse rights on the two Big Top installment notes. That action culminated in an agreed judgment order against Builders for $37,374.28 entered in the Circuit Court of Will County on May 11, 1977. In supplementary proceedings which followed entry of the judgment, Heritage sought to have both the escrow account at the Joliet Bank and the increments of the recapture fund payable from Maisel adjudged to be the property of Builders and therefore available for satisfaction of its judgment. Chicago Partners was permitted to intervene in the supplementary proceeding, and there it asserted its ownership interest in both the escrow account and the recapture fund. After a hearing, the court below determined that the ownership of the recapture payments remained with Builders and was therefore subject to the claims of Builders' creditor, Heritage. No decision appears in the orders entered by the court below concerning the ownership of the escrow account. Chicago Partners appealed from the decision below and now requests that we reverse the finding as to the ownership of the recapture fund and determine in the first instance the ownership of the escrow account.

■■ In seeking to have the decision of the circuit court reversed, Chicago Partners directs our attention to three documents which, according to its view, were each sufficient, standing alone, to terminate the interest of Builders in and to the future increments of the recapture monies. The first of these is the assignment of February 13, 1974, which was executed upon

the formation of the limited partnership. The second is the assignment of February 10, 1976, which was executed after the water main agreement with Maisel. We agree with the circuit court that neither of these instruments of assignment were sufficient, in light of all the attendant circumstances, to effect the transfer.

■■ The annexation agreement which created the recapture monies was not entered into until two days after the 1974 assignment. Although it purports to transfer intangible property "hereafter owned" by Builders, the creation and existence of an assignment must be determined according to the intention of the parties and that intent is derived, at least in part, from the surrounding circumstances. (*Associated Metals & Minerals Corp. v. Isletmeleri* (1955), 6 Ill. App. 2d 548, 128 N.E.2d 595.) The circuit court correctly determined that the surrounding circumstances deny the creation and existence of an assignment to Chicago Partners. The statement of assets filed on behalf of Chicago Partners in the chapter XII proceeding fails to include any mention of the future highway recapture payments. While Chicago Partners attempts to explain this omission as mere oversight, we agree with the learned trial judge that the omission by mere oversight of an asset with an estimated value of $230,000 is not credibly attributed to astute businessmen and their experienced counsel. In addition, the scope of the "hereafter owned" clause in the 1974 assignment is somewhat depreciated by language in the 1976 assignment upon which Chicago Partners itself places reliance. That 1976 assignment transfers Builders' interest in the water main agreement and escrow, and recited that Builders has not previously assigned its rights under that water main agreement. Yet, if the "hereafter owned" clause of the 1974 assignment is read as broadly as Chicago Partners urges, the assignment of the water main agreement was effected on February 13, 1974. It appears to this court that if the water main agreement and escrow were not intangible property "hereafter owned," then neither were the future highway recapture payments.

We find the 1976 assignment offers no support for the position of appellant, Chicago Partners, with regard to the recapture fund. The 1976 instrument is clearly limited by its express language to the transfer from Builders to Chicago Partners of the former's interest in and to the water main agreement and escrow. We agree with the trial judge that the execution of an express assignment to transfer this after-acquired intangible tends to support the appellee's position that without such an express assignment, no transfer of the highway recapture fund was intended by the parties.

The third document relied on by the appellant is the revision agreement dated January 28, 1977, which reorganized the limited partnership after the chapter XII petition was filed. Therein, Builders assigned all

its "claims" to Chicago Partners. This assignment was executed after the statement of affairs filed in the bankruptcy proceeding, after the statement which omitted the recapture fund from the list of Chicago Partners' assets. The circuit court judge determined that the absence of express language transferring the recapture fund in either the 1974, 1976, or 1977 assignment tended to support the ownership of the future payments by Builders. We believe such a rule would cast doubt on the efficacy of every general assignment, an instrument of considerable utility. Of course, every assignment must sufficiently identify the goods assigned (*Associated Metals & Minerals Corp. v. Isletmeleri*), as the parties must intend to accomplish an assignment. Intent may be reflected by the written instruments executed by the parties as well as from surrounding circumstances. (*Kramer v. McDonald's System, Inc.* (1978), 61 Ill. App. 3d 947, 378 N.E.2d 522.) Both the 1974 and 1977 instruments contain language of sufficient breadth to include the recapture payments, but while evidence of surrounding circumstances heard in the court below was more than sufficient to cast doubt on the scope of the sweeping assignment of 1974, no similar evidence in the record casts doubt on the scope of the 1977 assignment. We believe the 1977 revision agreement assigned the future recapture payments to Chicago Partners, the same entity obliged by contract to improve Route 53.[2] Since the future payments are not the property of Builders, the judgment creditor can have no direct interest by way of garnishment in the payments. (*Harris v. Valen Construction Co.* (1964), 49 Ill. App. 2d 265, 200 N.E.2d 70; *Sobina v. Busby* (1965), 62 Ill. App. 2d 1, 210 N.E.2d 769.) The payments are not subject to satisfying the Heritage judgment against Builders.

In respect to the water main escrow, our search of the record fails to reveal any finding or order by the circuit court which determines whether these escrowed funds are subject to the Heritage garnishment. We decline to make such a determination in the first instance. On remand, the parties may seek a finding from the circuit judge regarding these escrowed funds.

For the reasons set forth, and in reliance on the authorities cited, this matter is reversed and remanded to the Circuit Court of Will County for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

ALLOY and STOUDER, JJ., concur.

---

[2] The annexation agreement of February 15, 1974, binds the successor owners of the subject property as well as the signatory, Builders.