In re Irwin KATZ, Debtor.

Mordecai SAVITSKY and Samuel J. Fox, Plaintiffs,

v.

Irwin KATZ, Defendant.

Bankruptcy No. 81–886–L.
Adv. No. 81–0567.

United States Bankruptcy Court,
D. Massachusetts.

May 17, 1982.

John J. O'Connor, Jr., Roche, Carens & DeGiacomo, Boston, Mass., for plaintiffs.

Martha B. Kleinerman, North Easton, Mass., for defendant.

## MEMORANDUM AND ORDER RE MOTION FOR SUMMARY JUDGMENT

THOMAS W. LAWLESS, Chief Judge.

This court has before it Plaintiffs' motion for summary judgment in regard to their complaint seeking a determination of the dischargeability of a debt.

On May 21, 1981, the Debtor, Irwin Katz filed a voluntary petition under Chapter 7 of the Bankruptcy Code and an order of relief was entered. On July 10, 1981, the Plaintiffs, Rabbis Mordecai Savitsky and Samuel J. Fox filed a complaint to determine the dischargeability of a debt evidenced by a state court judgment. The events which led to the entry of this judgment are as follows:

On September 12, 1978, the Debtor commenced a civil action against the instant Plaintiffs in the Superior Court Department of the Trial Court for Norfolk County, Massachusetts. In his complaint, the Debtor alleged that Rabbis Fox and Savitsky intentionally interfered with his contractual rights to distribute a book entitled "To Eliminate the Opiate." The Debtor claimed that, in 1973, he had a valid and binding contract with Rabbi Marvin S. Antelman and that, under the terms of this contract, the Debtor was to be the sole and exclusive distributor of a book written and published by Antelman. The Debtor further alleged that on or about July 31, 1974, Rabbis Fox and Savitsky, in their capacity as members of the Massachusetts Council of Rabbis, issued an order to Rabbi Antelman to cease and desist from selling his book. The Debtor maintained that, as a result of this order, he was unable to perform his contract with Rabbi Antelman and he thereby suffered damages totalling two million dollars. The Debtor stated that the tortious interference with his contractual relationship had been continuous and repeated. During the course of the ensuing litigation, the Debtor made at least three attempts to disqualify the Rabbis' attorney, all of which proved unsuccessful. On May 21, 1979, Katz filed a motion to drop Rabbi Fox as a party defendant which motion was allowed on May 31, 1979. On September 13, 1979, after the submission of various affidavits and depositions of the Debtor and Antelman, the Trial Court granted the Rabbis' motion for summary judgment. Shortly thereafter, the instant Plaintiffs filed a motion pursuant to M.G.L. c. 231, § 6F seeking an award of counsel fees, costs and expenses which they had incurred as a result of the litigation. Section 6F provides for such an award in the event that it is determined after a hearing that the claims at issue "were wholly insubstantial, frivolous and not advanced in good faith." Plaintiffs motion was initially denied on October 17, 1979, however, on appeal, a single justice of the Appeals Court of Massachusetts awarded the Rabbis counsel fees and costs. This award was based upon § 6F. The Debtor appealed the decision of the single justice to a panel of the Appeals Court. The panel affirmed the single justice and awarded the Rabbis counsel fees and double costs on appeal. The panel found, as had the single justice, that the Debtor's claim against the Rabbis was wholly insubstantial, frivolous and not advanced in good faith. Judgment was entered and on March 19, 1981, an execution in the amount of $5,012.63 issued against the Debtor. It is this indebtedness which the Plaintiffs in the case at hand allege is nondischargeable.

■ The Plaintiffs assert that the attorneys' fees, costs and expenses which they incurred, as a result of the litigation initiated by the Debtor, constitute, as a matter of law, a debt for willful and malicious injury under § 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6).[1] The Plaintiffs also contend that the doctrine of collateral estoppel applies to preclude a determination by this court of the issue of willful and malicious injury and that, consequently, the Plaintiffs should be granted summary judgment. Plaintiffs rely in part upon *In re Gabrielson*, 1 B.R. 563 (Bkrtcy.E.D.N.Y.

---

1. 11 U.S.C. § 523(a)(6) provides: A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

1979) where the bankruptcy court held that a debt based upon a state court judgment for malicious prosecution constituted a debt for willful and malicious injury under § 17(a)(8) of the Bankruptcy Act. The court gave the state court judgment res judicata effect and thereby found the debt to be nondischargeable.

The Supreme Court recently held that, in the context of determining dischargeability under § 17(a)(2), (4) and (8) of the Bankruptcy Act, the doctrine of res judicata does not apply and a bankruptcy court is not required to limit its review to a judgment and record from prior state court proceedings. The Supreme Court reasoned that, where Congress had granted bankruptcy courts exclusive jurisdiction to decide particular issues, res judicata should not prevent those courts from exercising that jurisdiction. *Brown v. Felsen*, 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2212–13, 60 L.Ed. 767 (1979). Congress has also granted bankruptcy courts exclusive jurisdiction to decide dischargeability questions under § 523(a)(2), (4) and (6) of the Bankruptcy Code. 11 U.S.C. § 523(c). Therefore, the rule set forth in *Brown* is applicable in the case at hand. *In re Eskenazi*, 6 B.R. 366 (Bkrtcy., 9th Cir. 1980); *Matter of Trewyn*, 12 B.R. 543 (Bkrtcy.W.D.Wis.1981).

█ The issue in the present case does not involve the doctrine of res judicata but concerns the related principle of collateral estoppel. Collateral estoppel prevents the relitigation of an issue only if the following four requirements are satisfied: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. *Matter of McMillan (Appeal of Freedom Finance Co., Inc.)*, 579 F.2d 289 (3rd Cir. 1978). Collateral estoppel treats as final only those issues that were actually and necessarily decided in a prior suit. Should a state court decide factual issues using standards identical to or more stringent than those used in bankruptcy

dischargeability actions, then collateral estoppel, if held to be applicable, would preclude relitigation of those issues in a bankruptcy court.

The *Brown* Court left unresolved the extent to which collateral estoppel may be applied in dischargeability cases. *Brown*, supra, 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. The Ninth Circuit has taken the position that where bankruptcy courts have exclusive jurisdiction to determine dischargeability "there is no room for the application of the technical doctrine of collateral estoppel." *In re Houtman*, 568 F.2d 651, 653 (9th Cir. 1978). However, the Ninth Circuit later held that if both parties rest their cases on a judgment from a prior proceeding, the bankruptcy court may consider such facts as willfulness and malice to be established by collateral estoppel if those facts were necessarily determined to exist in the earlier proceeding. *Matter of Kasler*, 611 F.2d 308, 310 (9th Cir. 1979). The Third and Fifth Circuits would apply the doctrine. *Matter of Ross*, 602 F.2d 604, 607–08 (3rd Cir. 1979); *Matter of Merrill*, 594 F.2d 1064, 1066–67 (5th Cir. 1979). The First Circuit has not yet decided whether collateral estoppel is appropriate when a bankruptcy court has exclusive jurisdiction in a dischargeability case. *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143, 146 (1st Cir. 1980).

█ Debts for willful and malicious injury by the debtor to the person or property of another are specifically excepted from discharge by § 523(a)(6) of the Bankruptcy Code. In order for a debt to be nondischargeable under this section, the debtor's conduct must have been both willful and malicious. *In re McGiboney*, 8 B.R. 987 (Bankr., N.D.Ala.1981). The relevant legislative history indicates that a debtor's conduct will be characterized as willful and malicious only if such conduct was deliberate and intentional and not merely negligent or inadvertent. H.Rep.No.95–595, p. 365, U.S.Code Cong. & Admin.News 1978 p. 5787; *In re Donnelly*, 6 B.R. 19 (Bankr., D.Or.1980). "Malicious is not used in the sense of evil, personal ill will or hatred, but

simply done consciously and knowingly wrongful, and without just cause or excuse." *McGiboney, supra*, at 989.

▮ Assuming *arguendo* that the concept of collateral estoppel is applicable in all bankruptcy dischargeability actions, it would not apply in the case at hand because the precise issue sought to be precluded in this action may not have been the same issue that was involved in the prior state court action. In *Gabrielson*, the bankruptcy court based its decision upon a determination that the "actual malice" required by New York decisions, to establish the tort of malicious prosecution, was more narrow than and included within the meaning of willful and malicious as those terms are used in § 17(a)(8) of the Bankruptcy Act. There is no mention of malice, actual or otherwise in § 6F. *In Irwin Katz v. Mordecai Savitsky et al.*, No. 79–0349, slip op. at 3 (Mass.App.Ct. Jan. 31, 1980), a single justice of the Appeals Court of Massachusetts intimated that § 6F is applicable to claims other than those which can be characterized as malicious claims.

The statute permits an award only where it can be found that the claims in issue were "wholly insubstantial, frivolous and not advanced in good faith." I agree with the defendants' observation that the foregoing standards as used in the statute are not totally distinct and separate. As a consequence, I reject at the outset the plaintiff's contention that a claim brought with subjective good faith by the claimant is not frivolous no matter how meritless its legal theories might be. To read the statute in this limited fashion would effectively negate its purpose in all cases except malicious claims.

▮ A suit, sounding in tort, for malicious prosecution may be maintained in Massachusetts for the wrongful initiation of a civil action. *Hubbard v. Beatty & Hyde, Inc.*, 343 Mass. 258, 261, 178 N.E.2d 485, 487 (1961). The existence of this right of action

which expressly requires malice and which is distinct from an action under § 6F leads to the conclusion that § 6F was directed at something less objectionable than malicious conduct. It is apparent that the mental state which is required in order for a claim to be wholly insubstantial, frivolous and not advanced in good faith is not equivalent to the mental state required for a finding of malice. The standards used in the prior state court action did not require the measure of culpability that is necessary to support a finding of willful and malicious injury in a dischargeability action. Thus, Plaintiffs' assertion that a judgment based upon § 6F constitutes, as a matter of law, a nondischargeable debt under § 523(a)(6) is without merit.

The Plaintiffs have moved for summary judgment pursuant to Rule 56(c)[2] of the Federal Rules of Civil Procedure. This rule provides, in part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This court must determine whether there are any material issues of fact which would bar the granting of Plaintiffs' motion and entitle them to judgment as a matter of law.

▮ Plaintiffs, as the moving parties, have the burden of showing the absence of any genuine issue as to all material facts which support their theory of law. *Mack v. Cape Elizabeth School Bd.*, 553 F.2d 720, 722 (1st Cir. 1977). All doubts concerning the existence or nonexistence of a genuine issue of fact are to be resolved in favor of the party against whom the motion is sought. *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

---

**2.** Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings through

Rule 756 of the Rules of Bankruptcy Procedure.

In support of their motion, Plaintiffs submitted the pleadings, decisions and related documents from the state court action together with affidavits of themselves and depositions of the Debtor and Antelman. The issue to be decided is whether this court, on a motion for summary judgment, can draw the inference that the Debtor had a malicious state of mind when he prosecuted the state court litigation. All inferences that are drawn from underlying facts contained in affidavits, exhibits and depositions must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Ferguson v. Omnimedia, Inc.*, 469 F.2d 194 (1st Cir. 1972). In the context of nondischargeability actions, this court is reluctant to draw fact inferences relating to state of mind when ruling on motions for summary judgment. *In re Nahigian*, No. 79–1185–L (Bankr., D.Mass. Jan. 23, 1980). The drawing of fact inferences is more properly the function of the trier of facts and should rarely be attempted by the court on a motion for summary judgment. *See Empire Electronics v. United States*, 311 F.2d 175 (2nd Cir. 1962). "The questions of willfulness and maliciousness must be decided on the basis of facts found at trial by the bankruptcy court." *In re Day*, 4 B.R. 750, 753 (S.D.Ohio 1980) (creditor's motion for summary judgment in nondischargeability action denied even though bankrupt did not submit responsive memoranda or evidentiary material).

Conflicting inferences can be drawn from the facts in the instant case so that it cannot be said that, as a matter of law, the Debtor's conduct was malicious. The Debtor stated in his deposition that he helped Antelman collect material for Antelman's book and that the Debtor was to be the exclusive distributor of the book in the New England area (affidavit of John J. O'Connor, Jr. at pgs. 137, 138, 144). The Debtor also testified that he visited thirty or forty book stores while attempting to distribute the book (Aff. at 141), but that no stores would take the book after it had been banned by the Plaintiffs (Aff. at 142, 145, 148). The Debtor further testified that

he had delivered some books prior to the issuance of the order banning the book (Aff. at 145–46). He stated that he believed that the order was widely distributed (Aff. at 154) and that its effect was to prevent him from making a living by selling the book (Aff. at 156).

In light of these assertions, this court cannot draw the inference, on a motion for summary judgment, that the Debtor's conduct was knowingly wrongful and without just cause or excuse. *McGiboney, supra.* Accordingly, Plaintiffs' motion for summary judgment is denied.