In re William T. HOPKINS and Janet L. Hopkins, Debtors.

Rickey L. ALBIN, D.P.M. and Judith E. Rubin, D.P.M., Plaintiffs,

v.

William T. HOPKINS and Janet Hopkins, Defendants.

Bankruptcy Nos. 81 B 4553, 85 A 0780.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 17, 1986.

Sheldon S. Grauer, Broadview, Ill., for debtors-defendants.

Jeffrey M. Goldberg, Ltd., Chicago, Ill., for plaintiffs.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter comes to be heard on the motion of William T. Hopkins and Janet Hopkins, debtors and defendants in this adversary proceeding, for summary judgment in their favor on the complaint of Rickey L. Albin, D.P.M. and Judith E. Rubin, D.P.M. ("plaintiffs") seeking nondischargeability of their debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). For the reasons set forth below, the court, having carefully reviewed the pleadings, affidavits, and memoranda submitted by the parties, concludes that the debt herein is nondischargeable under 11 U.S.C. § 523(a)(6) as to William T. Hopkins, individually.

## BACKGROUND

·The facts are uncontested by the parties. In August and September, 1982, the plaintiffs performed podiatric services and surgery on both of the debtors. Plaintiffs' fees totalled $4,097.70. Prior to rendering professional services, the plaintiffs required the defendant William Hopkins ("Hopkins") to execute an Assignment of Benefits authorizing Hopkins' insurance carrier to pay the plaintiffs directly for their services. However, the insurance carrier issued the checks covering payment for plaintiffs' services directly to the debtors upon Hopkins' filing the insurance claims. Hopkins negotiated these checks

for his own use, although he subsequently made partial payments to the plaintiffs totalling $1,275.00.

On August 23, 1983, plaintiffs filed a complaint in the Circuit Court of Cook County, Illinois seeking payment of the unpaid balance of the debt. A default judgment was entered against the debtors for $2,897.70 in compensatory damages and against William Hopkins, individually, for $2,000.00 in punitive damages. In February, 1985, plaintiffs commenced Citation to Discover Assets proceedings against the debtors. These citation proceedings were subsequently stayed upon plaintiffs' discovering that the debtors were in bankruptcy proceedings.[1]

In the pending adversary proceeding, plaintiffs seek to have their debt declared nondischargeable on the bases that debtors 1) obtained plaintiffs' services through false pretenses, 11 U.S.C. § 523(a)(2)(A); 2) committed fraud and/or embezzlement while acting in a fiduciary capacity, 11 U.S.C. § 523(a)(4); and 3) caused willful and malicious injury to plaintiffs' property, 11 U.S.C. § 523(a)(6). Debtors contend in their answer that the insurance checks bore the name of William Hopkins, as payee, so that debtors' actions were not improper. Debtors further argue that the Assignment of Benefits executed by William Hopkins is defective, and therefore without force or effect, since, *inter alia*, it did not bear the name of the doctor to whom the payments were to be made either at the time it was executed by the debtor or at the time it was tendered to the insurance company.

In their motion for summary judgment, debtors urge that they are entitled to judgment as a matter of law that the debt is dischargeable. Janet Hopkins states by way of affidavit that she had no knowledge that the insurance checks were sent to her husband nor that her husband cashed the

---

1. Debtors had originally filed a Chapter 13 petition on April 17, 1981, which case was converted to the pending Chapter 7 proceeding in February, 1985. Plaintiffs had never been notified of the original bankruptcy filing nor were they initially listed as creditors at the time the Chapter 13 case was converted. Plaintiffs first learned of debtors' bankruptcy when debtors filed an amended schedule on April 14, 1985 naming plaintiffs as additional creditors.

checks prior to the fact. William Hopkins states in his affidavit that he did not know the checks would be sent to him, that he always intended to pay the bill and has in fact paid $1,275.00 toward the bill, and that he did not intend to permanently deprive the plaintiffs of any funds.[2] In their responsive memorandum, plaintiffs cite case law in support of their allegations under § 523, but nevertheless seek to have debtors' motion for summary judgment denied on the basis that the state of mind of the debtors, an essential element under §§ 523(a)(2)(A), (a)(4), and (a)(6), is still a material issue to be determined by the trier of fact.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy adversary proceedings by Rule 7056 of the Rules of Bankruptcy Procedure, provides in pertinent part:

(c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

The parties herein are in agreement as to the underlying facts, none of which appears to raise a genuine dispute which is material or relevant. All inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion for summary judgment. *In re Katz*, 20 B.R. 394, 399 (Bankr.D.Mass. 1982). Although plaintiffs contend that a genuine issue of fact exists with respect to debtors' intent, the court is of the opinion that the intent required under section 523(a)(6), which section is determinative of

this adversary proceeding, is particularly one which a court may infer from the nature of the conduct based upon a fair evaluation of all factors of the situation and thereafter determine as a matter of law. Moreover, as the Seventh Circuit has admonished, "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir.1970). Therefore, it is proper for the court to reach a determination on debtors' motion for summary judgment as a matter of law.

Section 523(a)(6) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, or 1328(b) does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity, ...

This court has previously held that the phrase "willful and malicious injury" used in section 523(a)(6) is intended to encompass "willful and malicious *conversion*." *In re Meyer*, 3 C.B.C.2d 534, 535, 7 B.R. 932 (Bankr.N.D.Ill.1981). *Accord* Collier on Bankruptcy, ¶ 523.16(1) at 523–137 (15th ed. 1984). Conversion is generally defined as an act of dominion wrongfully asserted over the property of another inconsistent with his ownership, an unauthorized act which deprives another of his property permanently or for an indefinite period of time. *Matter of Dino*, 17 B.R. 316, 318 (Bankr.M.D.Fla.1982). Before a finding of conversion can be made in this case, the court must initially determine whether the insurance company checks sent to the debtors were in actuality the property of the plaintiffs.

2. In support of their contentions that a partial payment was made and that debtors did not possess a fraudulent intent, debtors attach as an exhibit a note written by William Hopkins to the plaintiffs which reads as follows:

Please accept my apology if I've caused you any problems or inconvenience. I had some mortgage problems when I recieved [sic] the insurance money for your services. I didn't want Janet to know about it because she worries so much.

I was going to pay $800 today but my paycheck wasn't as much as thought it would be.

Inclosed [sic] in this note you'll find $600.00, I will pay the balance on Friday 12–4–82.

Again I apologize.

The plaintiffs rely on *In re Lavitsky*, 11 B.R. 570 (Bankr.W.D.Pa.1981), a factually similar case, in which the plaintiff-doctor submitted claims for payment of services directly to the debtor's insurer. The checks, however, were sent to the debtor who, stating he was dissatisfied with the services rendered, refused to turn over the checks to the physician. The court, in holding the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(6), stated that the debtor in that case never had a claim on the insurance checks. Rather, the court found that the checks belonged either to the doctor or to the insurer but were not for the debtor's personal use. The debtor was obligated upon receipt to pay over the checks to the doctor or return them to the insurer. The court found that a deliberate and intentional conversion occurred when the debtor personally used the funds without the plaintiff-doctor's knowledge or consent. *Id.* at 571.

This court believes that the fact the doctor himself submitted the insurance claims for direct payment in *Lavitsky* was determinative of the result. The relationship between the doctor and patient under the *Lavitsky* facts was thus not merely debtor-creditor. While expressing no opinion as to the soundness of the rationale in *Lavitsky*, this court nevertheless believes that in those cases where a doctor clearly looks to the patient, and not the insurance company, for direct payment of his fees, and leaves to the patient the responsibility for submitting insurance forms and seeking reimbursement, the doctor cannot thereafter assert any special claim to the proceeds subsequently received by the insured. In those situations, the commercial relationship between the doctor and patient *is* one of mere debtor-creditor and the doctor has no preferred position or greater claim to the debtor's property (i.e., the insurance proceeds) than other general unsecured creditors. Since the funds belong to the debtor as the insured, his subsequent use thereof would not constitute a conversion. *See Matter of Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983).

Therefore, a finding of conversion in the present case, since it was the debtors and not the doctors who submitted the insurance claims, must rest on the existence and validity of the Assignment of Benefits executed by the debtor, William Hopkins. An assignment, whether oral or written,[3] is the transfer of some identifiable property, claim or right from the assignor to the assignee. *Buck v. Illinois Nat. Bank & Trust Co.*, 79 Ill.App.2d 101, 106, 223 N.E.2d 167 (2d Dist.1967). At the time of the transfer, the parties must intend to effectuate an assignment. No particular language or procedure is necessary. *Id.* The intent to create an assignment is ascertained from the surrounding circumstances and the acts of the parties. *Heritage Bk. v. Recreational Retail Builders*, 97 Ill. App.3d 748, 752, 53 Ill.Dec. 189, 423 N.E.2d 573 (3d Dist.1981). Once a valid assignment is effected, the assignee acquires all the interest of the assignor in the property transferred. *Buck, supra,* 79 Ill.App.2d at 106, 223 N.E.2d 167.

Whatever defects the debtors now seek to point out in the form executed, it is clear that the debtor, William Hopkins, intended to assign the proceeds of the insurance checks to the plaintiffs herein. It is also clear from the surrounding circumstances that the assignment was made to these particular doctors, even though their name is not indicated on the form. In fact, the parties agree that the assignment was executed prior to treatment, thereby evidencing that the plaintiffs' services were rendered on the basis of the Assignment of Benefits to them. Whether or not the insurance company actually received the Assignment of Benefits form does not alter the fact of the assignment or its effect on the rights between the parties. The situation herein is analogous to those cases where a debtor is obligated to pay over premiums received upon the loss of insured collateral. *See, e.g., United Bank of Southgate v. Nelson*, 35 B.R. 766 (N.D.Ill. 1983). However, more than being merely property of the debtors impressed with a lien by way of a security agreement as

---

3. An oral assignment is valid in Illinois.

in the case of insured collateral, these checks were the property of the plaintiffs-assignees.

▆ The court concludes that the insurance checks received by the debtor, William Hopkins, were property of the plaintiffs via the assignment. Because the debtor, Janet Hopkins, did not execute the assignment and was also unaware that her husband had cashed the checks, as supported both by her sworn affidavit and the note written by the debtor, William Hopkins, to the plaintiffs (*see* n. 1, *supra*), the court further concludes that there is no basis for denial of a discharge from this particular debt with respect to Janet Hopkins. *See In re Bonefas*, 41 B.R. 74 (Bankr.N.D.Iowa 1984). Having concluded that the insurance checks were property of the plaintiffs, the court must now determine whether the use thereof by the debtor, William Hopkins, constituted a conversion which was both willful and malicious, thereby rendering the debt nondischargeable as to him under section 523(a)(6).

▆ Bankruptcy courts have consistently defined "willful" conduct under section 523(a)(6) as conduct that is intentional or deliberate as opposed to merely negligent or inadvertent. *See e.g., In re Meyer, supra; In re Katz, supra*. However, "malicious" as used in section 523(a)(6) has not been as consistently defined by the courts. One line of cases requires an actual conscious intent to cause harm to the creditor or his property, while the other line of cases requires only a finding of implied or constructive malicious intent. *United Bank of Southgate v. Nelson, supra*, at 768.

The court in *United Bank of Southgate* sought to ascertain the appropriate standard to be applied to the term "malicious." Based upon an examination of the history and legislative intent of the "willful and malicious injury" exception to discharge, the court in that case concluded that a finding of "malicious" should be premised upon an implied or constructive malicious intent and that an "intent to do harm" is not required. This court agrees. As the legislative history sets forth:

The intent is to include in the category of nondischargeable debts a conversion under which the debtor wilfully and maliciously intends to borrow property for a short period of time *with no intent to inflict injury but in which injury is in fact inflicted.*

H.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977) *reprinted in* U.S.Code Cong. & Admin.News 5787, 5963, 6320 (1978) (emphasis added). To impose a rigid and subjective "intent to do harm" standard would place a nearly impossible burden on a creditor to prove subjective intent by a debtor to do him or his property harm except by a debtor's own admissions and would thereby permit "a debtor's financial difficulties to serve as both justification for the conversion of collateral and a rebuttal to a requirement of an intent to harm the creditor." *United Bank of Southgate v. Nelson, supra*, at 776.

▆ In the present case, Hopkins admitted that he cashed the checks. This intentional act deprived the creditors of their funds. Thus, Hopkins' act was willful as defined under section 523(a)(6). Whether his conduct was also "malicious" under the implied malicious intent standard depends on whether Hopkins knew it was wrongful and had no just cause or excuse to proceed in the face of that knowledge. *See In re Katz, supra*, at 397. Hopkins would contend that his conduct was not malicious since he states that he used the funds openly and without intent to conceal, he continued to make payments to the plaintiffs, he had no personal ill-will toward the plaintiffs, and he did not commit any trick or artifice to have the insurance checks forwarded to him. However, as noted above, an act of conversion done deliberately and intentionally in knowing disregard of the rights of another falls within the statutory exclusion even though there may be an absence of special malice. *In re Lewis*, 31 B.R. 83, 86 (Bankr.W.D. Okla.1983).

▆ Hopkins knew that by cashing the checks, he injured the plaintiffs by depriving them of their funds. Moreover, he

knew his act was wrongful at the time, as indicated by his note to the plaintiffs, (*see* n. 1 *supra*), and that he was acting without plaintiffs' knowledge or authorization. Therefore, unless Hopkins had reasonable grounds to believe he had a right to cash the checks, his conduct was malicious within the meaning of section 523(a)(6). *See Matter of Storms, supra.* Hopkins' own note admitting he had no right to cash the insurance checks clearly negates any supposition that Hopkins reasonably thought his actions were proper. Moreover, the fact that he had other debts to pay does not support a finding of just cause. The court concludes that Hopkins consciously violated plaintiffs' rights in a wrongful manner and without just cause. Therefore, his act was "malicious" under section 523(a)(6).

■ Hopkins makes an additional argument that where a creditor leads a debtor to believe his course of conduct was proper, the debt may be discharged. In support, Hopkins states that the plaintiffs were notified that he cashed the checks but nevertheless accepted the subsequent partial payments made. Consequently, Hopkins contends that plaintiffs by their conduct led him to believe that cashing the checks was acceptable so long as Hopkins made payments and that plaintiffs thereby waived their right to proceed under the nondischargeability sections of the Code. The court finds this argument without merit. Plaintiffs' failure to raise a hue and cry upon learning that Hopkins had negotiated the insurance checks had no effect on their right to claim the sums due them to be a nondischargeable debt. Plaintiffs' rightful expectation and receipt of payment thereafter, in whatever amounts, cannot be construed as an acquiescence in the debtor's conduct so as to constitute a waiver of plaintiffs' right to recover the entire amount due them.

Upon review of the facts herein, the court concludes that the elements necessary to except this debt from discharge under section 523(a)(6) have been met. The court's determination that the debtor converted plaintiffs' property within the meaning of that section is dispositive of the issue of nondischargeability. Therefore, there is no need to determine whether Hopkins' conduct also fell within the parameters of sections 523(a)(2)(A) and (a)(4).

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment in their favor be, and is hereby denied. It is further ordered that the debt herein be, and is hereby declared nondischargeable as to William Hopkins, and dischargeable as to Janet Hopkins.