**In re CYCLE PRODUCTS DISTRIBUTING CO., Debtor.**

**DUNLOP TIRE CORPORATION, Movant,**

v.

**CYCLE PRODUCTS DISTRIBUTING CO., Central Bank, and Bridgestone (U.S.A.), Inc., Respondents.**

**Bkrtcy. No. 90–50156.**

United States Bankruptcy Court, S.D. Illinois.

Sept. 14, 1990.

Jane Carriker, St. Louis, Mo., for debtor.

David Antognolli, Granite City, Ill., for Dunlop, movant.

Ronald Pallmann, Belleville, Ill., for Central Bank, respondent.

Allen Churchill, Belleville, Ill., for Bridgestone, respondent.

## MEMORANDUM & ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

It is common for a business to have a creditor who advances products on a secured basis. The typical arrangement is for the creditor to advance inventory or supplies and then have a floating lien on the products and their cash proceeds to ensure payment. *See* 1A P. Coogan, W. Hogan & D. Vagts, Secured Transactions under UCC § 7.04[3][d], at 7–37. "A floating lien arrangement secures future advances under the same security agreement as of the time of the perfection of the original security agreement." 79 C.J.S. Supp. *Secured Transactions* § 51, pg. 53. For this type of arrangement to work effectively the creditor relies on having a first priority security interest in the collateral. 1A P. Coogan, W. Hogan & D. Vagts, Secured Transactions under UCC, at 7–37. The case before the Court involves such a credit arrangement, and a subsequent transfer of the floating lien to a new creditor.

The facts in this case are not in dispute. In August of 1984, Dunlop Tire and Rubber Corporation (DTRC) and Cycle Products Distributing Company (Debtor) entered into a security agreement which granted DTRC a floating lien on the inventory and its proceeds sold by DTRC to the debtor.[1]

---

1. GRANT OF SECURITY INTEREST. Buyer    hereby grants to Dunlop a continuing security

The security agreement was properly perfected by recording with the Illinois Secretary of State's Office on September 5, 1984.

Subsequently, on December 31, 1984, DTRC transferred substantially all its assets, including tangible and intangible assets, to Dunlop Tire Corporation (Dunlop).[2] This transfer included an assignment to Dunlop of all DTRC's rights under the security agreement with the debtor. On October 3, 1985, the parties filed a form UCC-3 with the Secretary of State evidencing the assignment of the security agreement to Dunlop.

Following the transfer of assets, Dunlop owned the accounts receivable and proceeded to collect the indebtedness. The debtor had a balance owing of approximately $305,000.00 which was paid to Dunlop. Dunlop then assumed the role which DTRC had previously held of advancing products to the debtor pursuant to the original security agreement. Dunlop and the debtor maintained the credit relationship until the debtor filed its Chapter 11 petition.

On March 6, 1990, Cycle Products Distributing Co., filed a voluntary Chapter 11 petition. Dunlop filed a motion for relief from stay approximately three months into the bankruptcy proceedings. Dunlop alleged it was entitled to relief in order to repossess the tire products it had advanced to the debtor because it had a priority security interest in the collateral and the debtor was not providing adequate protection.[3]

While the debtor did not object to the relief from stay, Central Bank, a creditor with a competing security interest, did object. Central Bank argues that the assignment from DTRC to Dunlop basically allowed Dunlop to collect the existing debt, but did not assign the right to continue making advances under the security agreement. Central Bank's position is that Dunlop should not have relied on the assigned security agreement but should have negotiated its own security agreement with the debtor.

Dunlop argues that by virtue of the assignment it stepped into the shoes of DTRC and was entitled to all the rights that DTRC had enjoyed pursuant to the security agreement. In essence, Dunlop argues that its name should be substituted for DTRC in the security agreement and it has all the rights DTRC had possessed including the right to make advances and have a security interest in the advanced products and their proceeds. The issue before the Court is whether an assignee of a security agreement which contains a future advance clause is entitled to make advances under the agreement and retain the original secured party's priority status.[4]

■ As a general rule, the law of the place where the collateral is located governs secured transactions. 79 C.J.S. Supp. *Secured Transactions* § 5. The collateral in question appears from the Court record to be located in Granite City, Illinois and thus the law of the state of Illinois will

---

interest in all of Buyer's inventory manufactured or sold by, or bearing the brand name or trademark of Dunlop, wherever located, now owned or hereafter acquired by Buyer, and all proceeds thereof, including but not limited to all accounts, contract rights, chattel paper, instruments, deposit accounts, insurance proceeds, and general intangibles, and all books of account and other records pertaining to said inventory and proceeds ("collateral") to secure the payment of all of Buyer's indebtedness to Dunlop, whether now existing or hereafter incurred, direct or indirect, contingent or otherwise and any renewals or extensions of time and whether such indebtedness is from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred, including, without limitation, any sums advanced by Seller for taxes, assessments, insur-

ance and other charges for expenses as hereinafter provided ("indebtedness"). This security interest shall include a purchase money security interest.

**2.** After the transfer to Dunlop Tire Corp., DTRC was dissolved and began doing business as Dunlop North American Inc.

**3.** It is not disputed that if the assignment from DTRC to Dunlop is valid that Dunlop holds the first priority. It is conceded that pursuant to Ill.Rev.Stat. ch. 26, ¶ 9–312(3) DTRC held a first priority in the collateral subject to the security agreement.

**4.** By agreement of the parties, this is the only issue before the Court. The Court reserves judgment on the motion for relief from stay.

govern. The Uniform Commercial Code (UCC), as adopted by Illinois, provides for assignment of a security interest. Ill.Rev. Stat. ch. 26, ¶ 9–302, ¶ 9–405 (Supp.1990). However, the UCC is silent as to how an assignment is effected. The UCC continues the applicability of general principles of law and equity except where they are displaced by particular provisions of the Code. White & Summers, Uniform Commercial Code § 5, at 19 (2nd ed. 1980). Thus, in the absence of an applicable code provision the Court must apply the general law of assignments. Ill.Rev.Stat. ch. 26, ¶ 1–103.

An assignment is the transfer of some identifiable property, claim or right from the assignor to the assignee. *In re Hopkins*, 65 B.R. 967, 971 (Bankr.N.D.Ill.1986). "No particular language or procedure is necessary." *Id.* A valid assignment depends on the intent of the parties. "To be an assignment, there must be an intent to effectuate one, and that intent may be reflected by any instruments executed by the parties, as well as from surrounding circumstances." *Kramer v. McDonald's System, Inc.*, 61 Ill.App.3d 947, 19 Ill.Dec. 21, 35, 378 N.E.2d 522, 536 (1st Dist.1978), *aff'd*, 77 Ill.2d 323, 33 Ill.Dec. 115, 396 N.E.2d 504 (1979); *See Also In re Hopkins*, at 971; *Heritage Bank of Bolingbrook v. Recreational Retail Builders, Inc.*, 97 Ill. App.3d 748, 53 Ill.Dec. 189, 192, 423 N.E.2d 573, 576 (3rd Dist.1981). Under Illinois law, once a valid assignment is effected, the assignee acquires all of the interest of the assignor in the property and stands in the shoes of the assignor. *Stride v. 120 West Madison Building Corp.*, 132 Ill. App.3d 601, 87 Ill.Dec. 790, 792, 477 N.E.2d 1318, 1320 (1st Dist.1985); *People v. Wurster*, 97 Ill.App.3d 104, 52 Ill.Dec. 648, 650, 422 N.E.2d 650, 652 (3rd Dist.1981); *People v. Dale*, 135 Ill.App.3d 15, 90 Ill.Dec. 21, 23, 481 N.E.2d 821, 823 (5th Dist.1985), *aff'd*, 112 Ill.2d 460, 98 Ill.Dec. 39, 493 N.E.2d 1060 (1986); *Art Signs, Inc. v. Schaumburg State Bank*, 162 Ill.App.3d 955, 114 Ill.Dec. 186, 188, 516 N.E.2d 341, 343 (1st Dist.1987).

In the present case, DTRC executed a bill of sale to Dunlop which states in pertinent part:

DTRC does hereby sell, transfer and assign to Dunlop, its successors and assigns, all of its right, title, and interest in and to all of the tangible and intangible assets of every kind and description, except cash and investments.

Bill of Sale, Dated December 31, 1984. In addition, DTRC executed a Form UCC–3, evidencing the assignment of the security agreement, which was filed with the Illinois Secretary of State. The UCC–3 stated that DTRC had assigned to Dunlop all of its rights in the security agreement with the debtor, including all of the collateral referred to in the original financing statement. Based upon the bill of sale, and the UCC–3 it is clear that the parties intended to effect an assignment of the security agreement. Furthermore, since a valid assignment was effected Dunlop is placed in the shoes of DTRC and acquires all rights under the security agreement, including the right to make future advances and be perfected as of the date of the original security agreement.

Central Bank relied on the case of *In re Fretz Company, Inc.*, 565 F.2d 366 (5th Cir.1978) to make the argument that allowing an assignment of a security agreement would permit creditors to purchase security for their claims. In *Fretz*, three security agreements were executed between E.A. Fretz Co., Inc., as the debtor, and Revlon, Inc. as the secured party. The agreements secured the payment of all debts owed by Fretz to Revlon, whether then existing or thereafter arising. Approximately sixteen months after executing the security agreements, Fretz filed a voluntary petition in Bankruptcy. After the bankruptcy filing, certain affiliates of Revlon assigned their unsecured claims to Revlon. Revlon then argued that its security interest extended to all indebtedness, including the assigned claims.

■ The Court concluded that Revlon's security interest was limited to the claim of Revlon at the time of the filing of the voluntary petition and did not extend to the

**646**

assigned claims. The *Fretz* Court was troubled by the implications of allowing unsecured debt to be transformed, post petition, into secured debt. The Court stated:

"We also decline to impose upon a junior secured creditor the burden of a frequent check to determine whether any unsecured parties have secretly assigned their claims to a senior secured party whose interest has been perfected. The risk and the burden would disrupt commercial transactions to an unwarranted and unnecessary degree."

*Fretz,* at 372. The *Fretz* case is easily distinguishable from the current situation. In *Fretz* there was a deliberate attempt by Revlon and its affiliates to improve their position by transforming unsecured debt to secured. In the present case, there is no attempt by Dunlop to improve its position since Dunlop had no position prior to the assignment. Prior to the assignment Dunlop was neither a secured nor unsecured creditor of the debtor, and merely stepped in and assumed the role which DTRC had previously held. Due to the factual differences this Court finds *Fretz* unpersuasive.

Under the facts of this case Central Bank is not harmed by allowing Dunlop to retain the priority position. In fact, Central Bank is in the exact same position it would have been in had DTRC made the advances rather the Dunlop. However, to invalidate the assignment and remove the priority status from Dunlop would effect a windfall to Central Bank since the bank would be placed in a better position than it would have been in had DTRC made the advances. In such a situation, equity as well as the law requires the Court to recognize the transfer from DTRC to Dunlop as a valid assignment which carried with it the right to make advances and be secured.

IT IS ORDERED that Dunlop Tire Corp holds the first priority in the collateral subject to the assigned security agreement.